# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CLAYTON THOMAS BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV416-297 |
| | ) | |
| JOSE MORALES, Warden, | ) | |
| individually and in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATIONS

Plaintiff Clayton Thomas Bell is an inmate at the Coffee County Correctional Facility. Doc. 7, ¶ 3. He brings this action, *in forma pauperis*, *see* doc. 3, against Jose Morales, Warden of Coastal State Prison, individually and in his official capacity, alleging that Morales disclosed his HIV-positive status to other inmates. *See* doc. 7, ¶¶ 4, 8. He seeks declaratory relief, nominal, compensatory, and punitive damages, and costs. *Id.*, ¶¶ 26-31. Also before the Court are Bell's motion for additional law library access, his "affidavit for arrest" of a prison guard, and his petition to depose another prisoner. Docs. 6, 9, & 10.

1

## I. BACKGROUND[1]

The underlying facts of this case are simple.[2] On July 12, 2016, Morales, who was in Bell's dorm for a routine inspection, "announc[ed] loudly and clearly to the entire population that [Bell] was HIV-positive, and issued a stern warning about participating in any sexual activity with him due to his HIV status." Doc. 7 ¶¶ 7-8. Because of Morales' revelation, other inmates "verbally, mentally, and emotionally assaulted [Bell] by taunting, harassing, intimidating, and making threats of physical violence." *Id.*, ¶¶ 9-11. He was moved to "a solitary cell [that] was designated for administrative segregation,"[3] where he remained until

---

[1] This Report and Recommendation relies on Bell's Amended Complaint. He was entitled to amend his complaint once, as a matter of course, within 21 days of service on the defendant, Fed. R. Civ. P. 15(a)(1), and Morales has not been served.

[2] At the preliminary screening stage, the Court liberally construes *pro se* complaints and takes plausible factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, [cit.], and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotes and cites omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

[3] Bell mentions in passing that he "never had a segregation hearing, which was required by prison policy for any inmate placed into administrative segregation." Doc. 7 ¶ 13. Although segregated confinement may implicate due process concerns, Bell's bare allegation is insufficient to state such a claim. The Supreme Court has explained that an inmate's liberty interests, and consequent due-process protection, are only implicated by segregation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In the absence of any allegation that Bell's segregation imposed

2

he was transferred out of the prison. *Id.* ¶¶ 12, 16. He grieved the issue, but had not received any response when he filed his Amended Complaint.[4] *Id.* ¶¶ 15, 18. He alleges that Morales' disclosure violated his Eighth Amendment rights, HIPAA, Georgia state law, and Georgia Department of Corrections policy. *Id.* ¶¶ 21-25. He requests declaratory relief, $100,000 in compensatory damages, $500 in nominal damages, $50,000 in punitive damages, and costs. *Id.* ¶¶ 26-29, 31.

## II. ANALYSIS

The Prison Litigation Reform Act (PLRA) requires federal courts to screen all civil cases in which a prisoner seeks redress from a government entity or official. *See* 28 U.S.C. § 1915A. The Court must screen out any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. *Id.* Similarly, 42 U.S.C. § 1997e(c)(1) allows the Court to dismiss any prisoner suit brought "with

---

any hardship beyond the ordinary conditions of his confinement, assuming he intended to assert a due process claim, it would fail. *See Harris v. Fowler*, 2006 WL 3408223 at *2 (S.D. Ga. Nov. 27, 2006) (allegation that plaintiff was placed "in segregation 'absent wrongdoing,'" failed to state a due process claim).

[4] Since filing his Amended Complaint, Bell has filed documents that show that his grievance is still working its way through the system. *See* note 7 *infra*.

3

respect to prison conditions," for the reasons stated in § 1915A. The Court thus examines Bell's Amended Complaint to determine whether he has stated any viable claim for relief.

A. **HIPAA Claim**

Bell alleges that Morales' disclosure of his HIV status was "a violation of federal law under 42 U.S.C.A. § 1320d-6(a)(3)." Doc. 7 ¶ 23. The cited code section is part of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), which protects the confidentiality of medical records. *Acara v. Banks*, 470 F.3d 569, 570-71 (5th Cir. 2006). Despite HIPPA's confidentiality protection, it provides no private right of action -- enforcement is reserved for the Secretary of Health and Human Services. *Id.* at 571-72; *see also Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action, [Cit.], or rights that are enforceable through § 1983." (citing *Acara*, 470 F.3d at 571-72)). Accordingly, Bell's HIPAA claim should be **DISMISSED**.

B. **Section 1983 Claim**

Bell also alleges that Morales' unauthorized disclosure of his HIV status was "deliberate indifference to [his] serious medical need . . .[,]"

4

constituting "cruel and unusual punishment under the Eighth Amendment to the United States Constitution." Doc. 7 ¶ 22. Such a claim requires: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need "must be one that, if left unattended, poses a substantial risk of serious harm," *id.* at 1307 -- for example, a broken bone, a wound, or a serious illness, *see, e.g. Farrow v. West*, 320 F.3d 1235, 1243 n. 14 (11th Cir. 2003) (providing examples of "sufficiently serious" medical needs). While Bell's HIV may constitute a "serious medical need," *see Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (HIV and hepatitis are serious medical conditions), the *confidentiality* of his HIV status does not.[5] Accordingly his § 1983 claim should be **DISMISSED**.

---

[5] In *Harris v. Thigpen*, the Eleventh Circuit considered a range of constitutional claims asserted by HIV-positive inmates. 941 F.2d 1495 (11th Cir. 1991). The *Harris* plaintiffs asserted both deliberate indifference to their serious medical needs (*i.e.* their HIV infections), *id.* at 1504-12, and unauthorized disclosure of their HIV status, *id.* at 1512-21. Despite facing both of these claims, there is no suggestion in the court's analysis that the disclosure of the plaintiffs' HIV status is cognizable as a deliberate indifference to their medical needs. *See generally, id.* Although that lack of discussion is not dispositive, it does suggest that the unauthorized disclosure of a prisoner's HIV status does not constitute indifference to his medical needs.

While *Harris* does not support Bell's medical-needs theory, it does suggest an alternative. *Harris* recognizes *the possibility* that unauthorized disclosure of a prisoner's HIV status might support a § 1983 claim, for violation of his right to privacy, though did not find that it was *per se* actionable. 941 F.2d at 1513, 1521 (stating that the court "believe[d] and assume[d] *arguendo* that seropositive prisoners enjoy some significant constitutionally-protected privacy interest in preventing the non-consensual disclosure of their HIV-positive diagnoses," but that "[t]he precise nature and scope of the privacy right . . . [was] rather ill-defined," and affirming dismissal based on countervailing penological interests). In light of the *Harris* court's hypothetical recognition of a privacy-based claim, another court in this Circuit has noted, in dismissing a prisoner's suit after § 1915 screening, that "to date, the Eleventh Circuit has not recognized a constitutional violation of an inmate's right to privacy when his or her HIV-positive medical status has been revealed to others within the prison, despite if the disclosure was verbal or non-verbal, incidental or deliberate." *Taylor v. Sherman*, 2014 WL 1259737 at * 5 (S.D. Ala. Mar. 26, 2014) (collecting cases). Even under the privacy-based theory suggested by *Harris*, therefore, the viability of Bell's claim is iffy at best. *See id.* ("Based on the firm precedent of the Eleventh Circuit, no constitutional violation can be found . . . for disclosing [plaintiff's] HIV status," and plaintiff's complaint failed to state a claim).

Despite the possible theory identified by *Harris*, Bell's claim should still be dismissed. This is not a case of an ambiguous *pro se* Complaint, which states facts that the Court might parse into a viable claim. *See, e.g. Wilkerson v. Georgia*, 618 F. App'x 610, 611-12 (11th Cir. 2015) (reversing dismissal where plaintiff, who "did not specifically cite § 1983," alleged facts supporting a cognizable claim). Bell's allegation of an Eighth Amendment indifference-to-medical-needs claim is crystal clear. Doc. 7 at 22 ("Defendant acted with *deliberate indifference* to Plaintiff's *serious medical need* by disclosing his sensitive medical information without a legitimate penological objective. Defendant's action violated Plaintiff's rights, *and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution* and caused Plaintiff pain, suffering, injury, and emotional distress.") (emphasis added). Indeed, it appears he amended his complaint, at least in part, to *specify* that theory. *Compare id., with* doc. 1 at 5 (alleging no specific constitutional violation). This Court cannot covert Bell's clear allegation of an Eighth Amendment violation into an allegation of a violation of his right to privacy, and then develop that claim from ambiguous authority. *See GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (quoting *Doubleday & Co. v. Curtis*, 763 F.2d 495, 502 (2d Cir. 1985)) ("'Among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expand *sua sponte* by the trial judge.'"). To do so would be to rewrite his pleading -- making this Court his *de*

6

## C. Remaining Claims

Bell also asserts violations of Georgia law and Georgia Department of Corrections policy. *See* doc. 7 ¶¶ 24-25. However, since he has not stated a federal claim for relief, the Court should dismiss the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), which permits a district court to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."); *see also Estate of Owens v. GEO Grp., Inc.*, ___ F. App'x ___, 2016 WL 4473219 at * 8 (11th Cir. Aug. 25, 2016) ("This Court has repeatedly said that, when all the federal claims have been dismissed pretrial, Supreme Court case law strongly encourages or even requires dismissal of the state claims.") (quotes and cites omitted). When supplemental jurisdiction is declined, the dismissal of the remaining claims is without prejudice. *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the

---

*facto* counsel. *See id.* (cites omitted) ("[E]ven in the case of *pro se* litigants . . . leniency does not give a court license to serve as *de facto* counsel for a party, [cit.], or to rewrite an otherwise deficient pleading in order to sustain an action, [cit.].").

federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Accordingly, Bell's remaining state-law claims should be **DISMISSED WITHOUT PREJUDICE**.

### III. CONCLUSION

In summary, Bell's Amended Complaint should be dismissed. Where a *pro se* plaintiff has failed to state a claim through artless drafting, the Court may afford him a second chance. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F. 3d 541, 542 & n. 1 (11th Cir. 2002) (en banc); *see also Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). "However, a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins*, 620 F. App'x at 711 (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). Bell's HIPAA claim is not amendable, thus it should be **DISMISSED WITH PREJUDICE**. Despite the fact that Bell's articulation of his § 1983 claim is a dead-end, it is not clear that the alleged facts would not support any claim. *See* note 5 *supra*. Thus, it should be **DISMISSED**

**WITHOUT PREJUDICE.**[6] The Court should also decline to exercise supplemental jurisdiction over his state-law claims, and those claims should be **DISMISSED WITHOUT PREJUDICE**. Since all of Bell's claims should be dismissed, his motions for additional library access to research his claims, doc. 6, and to depose another state prisoner, doc. 10, are **DENIED** as moot. Finally, Bell's request that the Court order the arrest of a prison employee, doc. 9, is **DENIED**.[7]

---

[6] On January 6, 2017, Bell filed additional documents purportedly supporting his Amended Complaint. Doc. 11. None alters the Court's analysis above. In fact, they show that he has not exhausted his administrative remedies. *See id.* at 15 (receipt for filing appeal of his grievance, dated December 9, 2016, with no allegation that appeal has been resolved). Exhaustion of available administrative remedies is a precondition for a prisoner suit, under the PLRA. *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856-57 (2016) ("[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust" his administrative remedies, thus "a court may not excuse a failure to exhaust"). Generally, failure to exhaust is an affirmative defense, but "[a] complaint may be dismissed for failure to exhaust if the lack of exhaustion appears on [its] face." *Dollar v. Coweta Cnty. Sheriff Office*, 446 F. App'x 248, 251-2 (11th Cir. 2011) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). That's the case here, though dismissal for failure to exhaust his administrative remedies would also be without prejudice. *See Howard v. Kraus*, 642 F. App'x 940, 942 (11th Cir. 2016) ("[D]ismissal for failure to exhaust administrative remedies is not an adjudication on the merits. . . ."); *Prickett v. Lawson*, 2008 WL 5046063 at * 3 (S.D. Ga. Nov. 24, 2008) ("Normally, the failure to exhaust warrants dismissal without prejudice.").

[7] No private citizen has authority to initiate a criminal prosecution. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."); *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) ("Not only are we unaware of any authority for permitting a private individual to initiate a criminal prosecution . . . but also to sanction such a procedure would be to provide a means to circumvent the legal

Meanwhile, it is time for plaintiff to pay his $350 filing fee. His furnished account information shows that he has had a $108.98 average monthly balance and $108.98 in monthly deposits in his prison account during the past six months. Doc. 5. He therefore owes an initial partial filing fee of $21.80. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The Clerk is **DIRECTED** to send this Report and Recommendation (R&R) to Bell's account custodian immediately. In the event he is transferred to another institution, plaintiff's present custodian shall forward a copy of this R&R and all financial information concerning

---

safeguards provided for persons accused of crime . . . ."). The United States Attorney has considerable, if not unfettered, discretion to decline initiation of a criminal prosecution. *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 380-81 (2nd Cir. 1973) (discussing difficulty of judicial review of decisions not to prosecute and concluding "substitution of a court's discretion to compel prosecution for the U.S. Attorney's decision not to prosecute, even upon an abuse of discretion standard of review and even if limited to directing that a prosecution be undertaken in good faith, [Cit.], would be unwise.") If Bell believes that he is the victim of a crime, he may report it to the relevant authorities.

payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this R&R.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this <u>12th</u> day of January, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA